UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| TAMMY S. O/B/O/ A.L.S., | § | |
| | § | |
| Plaintiff, | § | Case # 1:20-cv-931-DB |
| | § | |
| v. | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Tammy S. ("Plaintiff") brings this action on behalf of A.L.S., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying A.L.S.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order. *See* ECF No. 18.

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 15, 16. Plaintiff also filed a reply. *See* ECF No. 17.  For the reasons set forth below, Plaintiff's motion (ECF No. 15) is **DENIED**, and the Commissioner's motion (ECF No. 16) is **GRANTED**.

## BACKGROUND

On February 27, 2017, Plaintiff protectively filed an application for SSI child's benefits on behalf of her grandson, A.L.S., alleging disability beginning February 22, 2016. Transcript ("Tr.") 11, 236-45. The application was initially denied on July 6, 2017, after which Plaintiff timely requested a hearing. Tr. 162-73. On December 20, 2018, Administrative Law Judge Theodore Kim (the "ALJ") presided over a video hearing from Falls Church, Virginia. Tr. 11, Tr. 125-146.

Plaintiff and A.L.S. appeared and testified in Buffalo, New York, and were represented by Jeanne Murray, an attorney. *Id*. On March 22, 2019, the ALJ issued an unfavorable decision, finding A.L.S. not disabled. Tr. 11-27. On May 20, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's March 22, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to

determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and

medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed A.L.S.'s claim for benefits under the process described above and made the following findings in his March 22, 2019 decision:,

1. The claimant was born on December 16, 2010. Therefore, he was a preschooler on February 27, 2017, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since February 27, 2017, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), specific learning disability, oppositional defiant disorder, adjustment disorder with disturbance of conduct, and conduct disorder (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since February 27, 2017, the date the application was filed (20 CFR 416.924(a)).

Tr. 11-26.

Accordingly, the ALJ determined that, for the application for SSI, protectively filed on February 27, 2017, the claimant is not disabled under section 1614(a)(3)(C) of the Act.  Tr. 27.

## ANALYSIS

After reviewing the medical, educational, and testimonial evidence of record, the ALJ determined that A.L.S. was not disabled because his severe impairments did not meet or medically equal any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14-16. The ALJ found that A.L.S. did not have an "extreme" limitation in any one domain, or a "marked" limitation

in two or more of the six functional equivalence domains. Tr. 16-26; *see* 20 C.F.R. §§ 416.924, 416.926a. Specifically, the ALJ found that A.L.S. had a less than marked limitation in acquiring and using information and attending and completing tasks; a marked limitation in interacting and relating with others; and no limitation in moving about and manipulating objects, caring for himself, and health and physical well-being. Tr. 20-26. Accordingly, the ALJ concluded that A.L.S. was not disabled at any time during the relevant period. Tr. 20-26. 416.924(a).

Plaintiff asserts two points of error. Plaintiff argues that: (1) the Appeals Council failed to properly evaluate new and material evidence which undermined the ALJ's assessment of the functional domains; and (2) the ALJ's determination that A.L.S. did not functionally equal the Listings was not based on substantial evidence. *See* ECF No. 15-1 at 15-28.

The Commissioner argues in response that: (1) the Appeals Council properly denied Plaintiff's request for review; and (2) the ALJ properly evaluated the opinion evidence, and his assessments of the functional domains is supported by substantial evidence, including reports from A.L.S.'s teachers showing improvement from first to second grade, medical records showing improvement with medication, and the opinions of consultative examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano"), and state agency medical consultant B. Stouter, M.D. ("Dr. Stouter"). *See* ECF No. 16-1 at 8-24.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

As an initial matter, the Court finds that new and material evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d at 45 (holding that new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision).

The regulations expressly authorize claimants to submit new and material evidence[1] to the Appeals Council without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted, if it is chronologically relevant, to determine if the ALJ's action, findings or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014). When the Appeals Council denies review, however, regardless of whether a claimant presents additional evidence or only argument, it is the ALJ's decision that becomes the final decision of the Commissioner subject to judicial review. *See* 20 C.F.R. § 404.981; *see also Pollard*, 377 F.3d at 192 (comparing an Appeals Council's denial of a request for review to a denial of *certiorari* which carries no import as to the merits of a case).

Accordingly, when the Appeals Council denies review, this Court must review the ALJ's decision in the context of the entire administrative record, including any new evidence, to determine if the ALJ's decision is supported by substantial evidence, rather than review the

---

[1] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

Appeals Council's denial. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). The relevant inquiry is not whether the Appeals Council properly determined whether the evidence was new and material, but whether the ALJ's decision is supported by substantial evidence in light of the additional information submitted to the Appeals Council. *Id*. In other words, a reviewing court must determine whether the submitted evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010); *see Bushey*, 552 F. App'x at 98 (noting that new evidence "did not alter the weight of evidence so dramatically as to require the Appeals Council to take the case").

First, with respect to medical records from Summit Pediatrics for the period January 27, 2015 through December 10, 2015, submitted after the ALJ's decision, the Appeals Council properly determined that this evidence was not new as it was duplicative of records already contained in the record. *See* Tr. 2, 412-24. Plaintiff also submitted educational records from Niagara Falls City School District for the period September 1, 2015 through September 4, 2019 which consists of a copy of an individualized educational program ("IEP") for the period September 4, 2019 through September 4, 2020, and copies of reports cards for 2015-2016, 2016-2017, and 2018-2019 school years. Tr. 43-58. The Appeals Council found that this evidence did not show a reasonable probability that it would change the outcome of the decision. Tr. 2.

As for the remaining evidence submitted, the Appeals Council found that the evidence did not relate to the relevant timeframe. Said remaining evidence consists of the following:

- Medical records from Edward Brown, M.D. (Dr. Brown") dated February 27, 2019 through July 12, 2019 (Tr. 70-79)[2];

---

[2] In addition to one treatment record from Dr. Brown—a follow-up appointment on July 12, 2019 (Tr. 76), these records contain treatment notes from social worker Kendra Washington, LCSW-R ("Ms. Washington"), for therapy visits on February 27, 2019 (Tr. 70), March 6, 2019 (Tr. 71-72), March 18, 2019 (Tr. 73), March 22, 2019 (Tr. 74). and March 29, 2019 (Tr. 75); and laboratory toxicology reports dated March 6, 2019 (Tr. 77-79) and July 25, 2019 (Tr. 79).

- Records from In-Home Respite Coordinator[3] Sara Carlson dated September 11, 2019 through September 30, 2019 (Tr. 81);

- Teacher Questionnaire from Niagara Street Elementary dated October 4, 2019 (Tr. 61-68);

- Educational Placement Notice from Niagara Street Elementary dated July 15, 2019 and July 16, 2019 (Tr. 83-85);

- Educational records from Henry J. Kalfas Magnet School consisting of copies of a Comprehensive Assessment, Mental Status Exam and Treatment Plan Outlined by New Directions and Youth Family Services ("New Directions"), dated April 17, 2019, with a review date of June 20, 2019 (Tr. 87-112); and

- Proposed IEP for 2019-2020, dated May 23, 2019 (Tr. 113-24).

The Appeals Council determined that, since A.L.S.'s case was decided through March 22, 2019, this additional evidence did not relate to the period at issue, and therefore, did not affect the decision about whether A.L.S. was disabled beginning on or before March 22, 2019. Tr. 2. The Court has reviewed the entire record, including the additional evidence, and finds that the Appeals Council did not err by refusing to review the ALJ's decision in light of the new evidence, as the new evidence presented did not shed any light on Plaintiff's condition as it existed on or before the ALJ's March 22, 2019 decision.

First, contrary to Plaintiff's argument, the Appeals Council was not required to provide an explanation of why the later-submitted evidence did not necessitate review of the ALJ's determination beyond the Appeals Council's statement that the evidence did not show a reasonable probability that it would change the outcome of the decision (Tr. 2). *See* ECF No. 15-1 at 15-21. The Appeals Council is not required to provide an elaborate explanation when it evaluates additional evidence presented. 20 C.F.R. §§ 404.967, 416.1467 (only requires that the Appeals Council notify the party of its action) and §§ 404.970, 416.1470 (does not mention any information

---

[3] The In-Home Respite Program is described as "a non-clinical service that does not employ the use of treatment plans, progress notes, or counseling services. Tr. 81.

that must be in the denial notice). Furthermore, the Second Circuit has specifically acknowledged that the Appeals Council's denial of review does not amount to consideration on the merits but rather, is analogous to denial of *certiorari*. *See Pollard v. Halter*, 377 F.3d, 183, 192 (2d Cir. 2004) (citations omitted). Thus, the Appeals Council was not required to specify why it found the additional evidence did not warrant further review of the ALJ's decision. Thus, Plaintiff's argument that a lengthier explanation was needed fails.

Even assuming the Appeals Council erred by refusing to consider new evidence, a reviewing court is able to review the entire record and determine whether the same conclusion is warranted even if the evidence at issue had been considered. *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39-40 (2d Cir. 2020)). Therefore, the only issue here is whether the ALJ's decision is still supported by substantial evidence in light of the additional information submitted to the Appeals Council. *See Rutkowski*, 368 F. App'x at 229 (the relevant inquiry is whether the new evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence."). Despite Plaintiff's arguments, the evidence submitted is not probative and would not reasonably change the decision reached by the ALJ.

The educational records submitted from Niagara Falls City School District covered school years from September 2015 through June 2019. Tr. 51-57. These reports showed A.L.S. doing well in pre-kindergarten but having difficulties in first and second grade, which was information already before the ALJ. The final year of newly submitted educational records (2018-2019) extended beyond the final period considered by the ALJ, which ended on March 22, 2019; but even so, it showed A.L.S. to have minimal progress in reading and some aspects of writing but approaching or meeting standards in all other academic areas, which is consistent with the ALJ's analysis. Tr. 51-52.

The later-submitted evidence also included notes from social worker Ms. Washington, dated between February and March of 2019. Tr. 70-75. In these records Plaintiff reported frustration with A.L.S.'s school. Tr. 70. Plaintiff reported that she had urged the school to enroll A.L.S. in smaller classes to decrease his behavior outbursts, but the school denied her request for special education testing due to A.L.S. being "too smart." *Id*. Plaintiff also reported that A.L.S. had been eager and successful with one-on-one tutoring he had received, and Ms. Washington noted that A.L.S. was quiet and cooperative during that day's therapy session, responding to prompts while drawing. *Id*. Plaintiff further reported that A.L.S. had trouble with his siblings, which is consistent with the ALJ's determination of marked limitations in the functional domain of interacting and relating with others. Tr. 22, 70. Although he continued to report having trouble at school on March 6, 2019, Ms. Washington described him as quiet and cooperative, and Plaintiff denied urgent concerns during a session on March 29, 2019. Tr. 71, 75.

Also post-dating the relevant period are medical records from Dr. Edward Brown, who examined A.L.S. on July 12, 2019, and determined that he would need treatment for sleep apnea; however, a physical examination was otherwise normal. Tr. 76, 84-85. Plaintiff does not explain how this information might have changed the ALJ's decision.

Plaintiff also argues that A.L.S. received in-home respite services as of September 2019 (Tr. 81), which might have changed the ALJ's determination, but she does not explain why this conclusion necessarily follows. *See* ECF No. 15-1 at 17-18, 20. Not only does this evidence post-date the relevant period, but it concerns the provision of free childcare services to relieve caregivers who care for children with mental health diagnoses (in this case A.L.S.'s grandmother).[4] However, the record reflects that ALJ was aware of A.L.S.'s mental health diagnoses and took them into

---

[4] *See* http://mhanc.com/programs-in-home-respite.php (last accessed May 9, 2022).

account in determining the various limitations in the functional domains, and thus, this information would not have changed the ALJ's determination. Tr. 14.

A report from A.L.S.'s third grade teacher Kassie Ligamman ("Ms. Ligamman") in October 2019 is also beyond the relevant period as Ms. Ligamman only started working with A.L.S. in September 2019. Tr. 61-68. However, even if this information did concern the relevant period, it was consistent with the ALJ's determinations in that it indicated "no problem" or "a slight problem" in key activities of acquiring and using information, with the exception of one rating "an obvious problem" in expressing ideas in written form.[5] Tr. 62. Ms. Ligamman also indicated that A.L.S. had no more than "a slight problem" with attending and completing tasks (Tr. 63), and although Ms. Ligamman reported that A.L.S. struggled with his emotions, he was rated at no more than a 3 in this area, and the narrative stated that if teachers spoke to A.L.S. or gave him space, he usually calmed down. Tr. 66. As previously noted, these evaluations are not from the relevant period; and even if they were, they do not "make the ALJ's decision contrary to the weight of the evidence." *Rutkowski*, 368 F. App'x at 229.

The record also reflects that A.L.S.'s school implemented an IEP and recommended that he be placed in a smaller size class with more personal attention for the 2019-2020 school year (third grade), which, again, was after the period at issue. Tr. 43-49, 83, 113-14, 116-24. As with the other evidence, however, even if the IEP pertained to the relevant period, it would not have changed the ALJ's determination as it merely reflected information already taken into account by the ALJ, *i.e.*, that A.L.S. struggled with social situations and improved when provided with additional support and individualized attention. Tr. 14-26, 70, 116.

---

[5] The form sets forth a 1-5 rating system with 1 indicating no problem, 2 indicating a slight problem, 3 indicating an obvious problem, 4 indicating a serious problem, and 5 indicating a very serious problem. Tr. 62.

Finally, an intake assessment from New Directions, dated April 17, 2019, also post-dated the relevant period. Tr. 38-40, 87-111. As with the other evidence, however, even if Plaintiff's argument that this evidence related back to the relevant period were correct, it would still not sway the weight of the evidence so as to change the ALJ's decision. This intake from New Directions shows that A.L.S. had problems with aggression and conflict with his siblings and other family members. Tr. 38-40. His goals were to identify triggers of aggression and use coping skills. Tr. 38-40. This is consistent with the ALJ's acknowledgement that A.L.S. was working on coping skills to handle his anger, and his determination that A.L.S. had marked limitations in interacting and relating with others. Tr. 22-23, 25. Furthermore, although A.L.S. had a secondary goal of reducing self-harm threats and actions, this appeared to originate from Plaintiff's report on April 17, 2019, that he had recently cut himself with a razor, further supporting that the incident was outside the relevant period. Tr. 87. Additionally, New Directions determined that A.L.S. was not a suicide risk. Tr. 87, 89. Furthermore, a mental status examination was normal, providing further support that this evidence would not have changed the ALJ's determination. Tr. 91. Thus, the Appeals Council properly considered these records and correctly found that they did not constitute a basis for review. Tr. 2. Because the new evidence did not make the ALJ's ultimate finding that A.L.S. did not have marked limitation in two, or extreme limitation in one, domain "contrary to the weight of the evidence," the Court finds that remand is not warranted. *See Rutkowski*, 368 F. App'x at 229.

The Court next turns to Plaintiff's arguments directly challenging the ALJ's decision. Plaintiff does not dispute the ALJ's findings with respect to the domains of interacting and relating with others and moving about and manipulating objects but argues that the ALJ should have found

at least marked limitations in the domains of: (1) acquiring and using information, (2) attending and completing tasks, or (3) caring for oneself. *See* ECF No. 15-1 at 21.

When assessing a child's ability in each of the six domains, an ALJ considers evidence from all settings, including school records, such as grades and aptitude and achievement test scores; evidence from medical and non-medical sources; and evidence from the child himself. *See* Social Security Ruling ("SSR") 09-3p, 2009 WL 396025, *5. It is Plaintiff's burden to submitting evidence to corroborate her allegations and to demonstrate disability. *See e.g. Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999); 20 C.F.R. § 416.912(a). Here, the ALJ followed these procedures and conducted a thorough discussion of the evidence to find that A.L.S. did not meet or medically equal a particular Listing and did not satisfy the criteria for functional equivalence to a Listing. Tr. 14-26. The ALJ provided explanations for how the evidence of record supported his findings, which direct a conclusion of "not disabled" in this case. *See* 20 C.F.R. § 416.926a(d) (unless a claimant has at least two "marked" or one "extreme" limitation in the six domains of functioning, he will be found "not disabled").

The regulations define "marked limitation" as follows: "where a child's impairments interfere seriously with his ability to independently initiate, sustain, or complete activities, and is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i); *see also Frye ex rel. A.O.*, 485 F. App'x at 487 ("A child will be found to have a marked limitation in a domain when his impairment interferes seriously with his ability to independently initiate, sustain, or complete activities."). The regulations define "extreme limitation" as follows: "where a child's impairments interfere very seriously with his ability to independently initiate, sustain, or complete activities and is the equivalent of the functioning

expected to be found on standardized testing with scores that are at least three standard deviations below the mean." 20 C.F.R. § 416.926a(e)(3)(i). Extreme limitations are greater than marked limitations and are the worst limitations. *Id*.

Contrary to Plaintiff's arguments (*see* ECF No. 15-1 at 21-27), the ALJ appropriately evaluated the evidence of record to determined that ALS had less than marked limitations in the domains of acquiring and using information and in attending and completing tasks, and no limitation in the domain of caring for himself. Tr. 14-22, 24-25.

The domain of acquiring and using information refers to how well the child acquires or learns information, and how well the child uses the information learned. 20 C.F.R. § 416.926a(g).

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and her ability to prioritize competing tasks and manage his time. 20 CFR 416.926a(h) and SSR 09-4p.

The domain of caring for oneself considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways.  This includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area. 20 CFR 416.926a(k) and SSR 09-7p.

Here, the ALJ discussed the evidence of record that addressed A.L.S.'s functioning in the relevant domains and the ultimate decision was supported by substantial evidence. Tr. 21-22. The ALJ took into account that consultative examiner Dr. Fabiano observed that A.L.S.'s attention and concentration were impaired due to his age, but that he could complete counting tasks. Tr. 15-16,

22, 398. Dr. Fabiano also reported that A.L.S. had coherent and goal-directed thought processes, appropriate thought content, and clear sensorium. Tr. 16, 398.

The ALJ also considered that mental status examinations done by Dr. Fabiano and others indicated that A.L.S. was cooperative, attentive, and maintained appropriate eye contact. Tr. 17, 402, 463, 465, 471, 514, 591. A.L.S. reported that he needed assistance to dress himself because he needed help buttoning pants, but that he could tie shoes and zip zippers; wash his face and hands; brush his teeth; and toilet independently. Tr. 399. Dr. Fabiano's examination indicated that A.L.S. had mildly impaired memory due to distractibility and his age. Tr. 18, 398.

In evaluating these domains, the ALJ also took into account the result of testing administered by Dr. Fabiano, including WISC-V (Wechsler Intelligence Scale for Children Fifth Edition) testing, indicating a Full Scale IQ score of 76, which was within the borderline range of intellectual functioning. Tr. 18, 21, 402-03. The ALJ also considered the results of additional testing in May of 2018, which revealed that A.L.S. had average cognitive and written language abilities, low reading abilities, and below average math abilities. Tr. 18, 629.

On the basis of his examination, Dr. Fabiano opined that A.L.S. had moderate limitations in the ability to attend to, follow, and understand age-appropriate directions; sustain concentration; complete age-appropriate tasks; and adequately maintain appropriate social behavior and interact with others. Tr. 18, 399. Dr. Fabiano further opined that A.L.S. had moderate limitation in his ability to learn in accordance with cognitive functioning. Tr. 18, 399. Dr. Fabiano also opined that A.L.S. had no limitations in his ability to respond appropriately to changes in the environment; ask questions and request assistance in an age-appropriate manner; or be aware of danger and take needed precautions. Tr. 18-19, 399. The ALJ gave some weight to most of Dr. Fabiano's opinion, observing that it was consistent with other parts of the record such as A.L.S.'s school records

regarding his cognitive functioning. Tr. 19, 399. He gave little weight, however, to the opinion

that A.L.S. had a moderate limitation in his ability to adequately maintain appropriate social

behavior and interact with others, because it was inconsistent with school records, teacher

questionnaires, and statements from Plaintiff indicating greater difficulty in that functional

domain. Tr. 19, 399. The ALJ thus took into account the crucial factors of 20 C.F.R. § 416.927(c)

in assessing this opinion; after considering the examination (factors of examining and treatment

relationship), its results (factor of supportability), and the consistency with the record as a whole,

properly assigned Dr. Fabiano's opinion partial weight. Tr. 19.

Dr. Fabiano's opinion and test results were also part of the record considered by state

agency medical consultant Dr. Stouter, who reviewed the evidence of record and opined that

A.L.S. had less than marked limitations acquiring and using information, attending and completing

tasks, and no limitation in caring for himself. Tr. 152-53. The ALJ gave some weight to these parts

of this assessment because it was consistent with the record as a whole, including A.L.S.'s 504

plan findings of average cognitive and written language abilities, low reading abilities, and below

average math abilities. Tr. 18, 152-53. As with the opinion of Dr. Fabiano, however, the ALJ gave

little weight to Dr. Stouter's determination that A.L.S. had less than marked limitations interacting

and relating with others, instead determining that the evidence as a whole indicated marked

limitations. Tr. 18, 152-53.

The evidence of record considered by the ALJ, including the opinions of Drs. Fabiano and

Stouter, provide substantial evidence for the determination that A.L.S. had less than marked

limitations in the functional domains of acquiring and using information and attending and

completing tasks and no limitation in caring for himself. *See* 20 C.F.R. § 416.913a(b)(1) ("Federal

or State agency medical or psychological consultants are highly qualified and experts in Social

Security disability evaluation"); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence to contradict the opinion of a treating physician); *Frye ex rel. A.O.*, 485 F.App'x at 487 ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *see also Camille v. Colvin*, 652 F. App'x 25, 27 n. 2 (2d Cir. 2016); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir.1995).

In addition, the ALJ properly considered and evaluated reports from A.L.S.'s first and second grade teachers. Plaintiff asserts that SSR 06-3p, which addressed how opinions and other evidence from nonacceptable medical sources were evaluated, applies in this case, and the ALJ failed to comply with this SSR when considering the opinions of these teachers. *See* ECF No. 15-1 at 23-24. Contrary to Plaintiff's assertion, the ALJ, in fact, did consider the opinions pursuant to this SSR, although he was not required to do so because SSR 06-3p was "Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263 effective March 27, 2017."[6] The ALJ's decision was dated March 22, 2019, after the date SSR 06-3p was rescinded. Tr. 8. Thus, Plaintiff's argument that this case should be remanded because of an alleged failure to evaluate the opinions of A.L.S.'s teachers under SSR 06-3p is without merit. However, the ALJ properly complied with 20 C.F.R. § 416.927(f)(2), which applied to this decision, and which requires a general explanation of the weight given to opinions from nonmedical sources such that a subsequent reviewer may follow the adjudicator's reasoning.

In considering the functional domain of acquiring and using information, the ALJ noted that A.L.S.'s first-grade teacher, Maria DAntonoli ("Ms. DAntonoli") observed in June of 2018

---

[6] *See* https://www.ssa.gov/OP_Home/rulings/di/01/SSR2006-03-di-01.html (last visited May 10, 2022); Federal Register Notice Vol. 82, No. 57, page 15263, available at https://www.ssa.gov/OP_Home/rulings/PDF/2017-05959.pdf (last visited May 10, 2022).

that A.L.S. did very well in math, caught on quickly, and maintained learning objectives. Tr. 15, 299. The ALJ acknowledged that Ms. DAntonoli stated reading was difficult for A.L.S., and that although progress was made, he was still below grade level. Tr. 15, 299. However, the ALJ further pointed out that A.L.S.'s second-grade teacher, Joanne Touchette ("Ms. Touchette") stated in November 2018 that, with intervention services A.L.S. made significant improvements in his oral reading fluency. Tr. 15, 356. In fact, Ms. Touchette rated his problems with acquiring and using information as no more than "slight" problems. Tr. 356. The ALJ explicitly took into account the fact that both Ms. DAntonoli and Ms. Touchette were able to observe ALS's abilities first-hand, and their observations were within the scope of their role as his teachers. Tr. 20. However, he reasoned that only "some weight" was due the opinion of Ms. DAntonoli because at the time she authored the opinion, A.L.S. had not yet been tested to determine his eligibility for special education services, and a subsequent evaluation by Ms. Touchette revealed that A.L.S. had significant improvement with such services. Tr. 19, 298-305, 355-62, 634-35. Thus, the ALJ's analysis of these opinions was proper and supports the rating of less than marked limitation in the functional domain of acquiring and using information.

With respect to the domain of caring for himself, in addition to the opinions of Drs. Fabiano and Stouter that ALS had no limitations in this area, the ALJ considered the testimony of Plaintiff and the reports of his teachers. Tr. 25. Contrary to Plaintiff's charge that the ALJ ignored negative evidence (*see* ECF No. 15-1 at 21-22, 27), the ALJ in fact recognized that Plaintiff testified that he had problems controlling his behavior and emotions and issues with sleepwalking. Tr. 25, 136, 143. The ALJ also took into account that A.L.S. engaged in individual therapy regarding his triggers to anger and learned coping strategies and that his 504 plan was updated to more effectively accommodate his needs. Tr. 25, 374, 463-81, 629-31. Plaintiff indicated that he took

care of his personal hygiene and was able to independently get dressed, eat, and put toys away. Tr. 25, 265.

Although first-grade teacher Ms. DAntonoli reported a range of "no problem" to "a very serious problem" in issues relating to caring for himself, the ALJ pointed out that second-grade teacher Ms. Touchette documented that A.L.S. had no problems in caring for personal hygiene and physical needs and had only a slight problem with coping skills and knowing when to ask for help. Tr. 25, 303, 360. Although Ms. Touchette reported he had a serious problem handling frustration appropriately, she did not report he had a very serious problem in any aspect of caring for himself. Tr. 25, 360. However, the ALJ gave little weight to this part of Ms. Touchette's opinion, explaining that A.L.S. was not as limited in these areas as Ms. Touchette opined, and pointing out that she had not provided a narrative explanation with regard to the domain of caring for oneself. Tr. 19, 360; *see Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) (noting that an opinion was a checkbox form was part of a "good reason" for giving a doctor's opinion less weight). The ALJ also pointed out that treatment notes reflected that A.L.S. presented as well-groomed and nourished and demonstrated intact judgment and insight. Tr. 25, 398, 445, 447, 475, 479. Together with the opinions of Drs. Fabiano and Stouter, this provides substantial evidence for the ALJ's determination, and Plaintiff has not shown that marked limitations were necessary in this area.

With respect to attending and completing tasks, the ALJ considered that A.L.S.'s school records indicated that his impulsivity and lack of focus and self-regulation skills impacted his ability to be successful in the classroom and that Ms. DAntonoli reported he took a long time to complete assignments, if they were completed at all. Tr. 22, 300, 630. However, improvement was seen the next year, when Ms. Touchette opined that although A.L.S. had a very serious problem organizing his things and a serious problem changing from one activity to another without being

disruptive and working without disrupting others, he had no more than a moderate problem in any other area in this domain. Tr. 357 The ALJ gave little weight to this part of Ms. Touchette's opinion, explaining that A.L.S. was not as limited in these areas as Ms. Touchette opined because Ms. Touchette again did not provide a narrative explanation with respect to her opinion regarding this domain. Tr. 19, 357, 360; *see Heaman*, 765 F. App'x at 501. Even had the ALJ given it more weight however, the majority of the opinion supports the findings of less than marked limitations in this domain.

Notably, Ms. Touchette indicated that A.L.S. had only a slight problem focusing long enough to finish an assigned activity or task or working at a reasonable pace and finishing on time, and no problem carrying out single-step instructions. Tr. 357. Furthermore, the ALJ took into account that A.L.S. received behavioral therapy and treatment with medication to address his attention deficits, and although Plaintiff reported that he was unable to pay attention or stick to tasks and required frequent reminders, she later reported improvement in his behavior when his medication was increased. Tr. 22, 266, 479.

Furthermore, contrary to Plaintiff's argument that the ALJ did not consider that A.L.S.'s improvement in school came when he was provided with additional assistance such as services, aid, and academic tools (*see* ECF No. 15-1 at 26), the ALJ explicitly discussed the fact that A.L.S. was provided with supports at school and took these supports into account in determining that A.L.S. had less than marked limitations in this functional domain. Tr. 21, 630. The ALJ also specifically discussed A.L.S.'s 504 plan, stated that he had passed his classes "with special education assistance," and considered throughout the decision that improvement in reading came with additional support. Tr. 15, 18-19, 21, 299, 356, 629-31. This constitutes sufficient consideration of the additional supports A.L.S. received and does not undermine the ALJ's

determination that A.L.S. had less than marked limitations in this functional domain. *See Zoe R. on behalf of Y.N.P. v. Comm'r of Soc. Sec.*, 2021 WL 3270505, at *2–3 (W.D.N.Y. July 30, 2021) (finding an ALJ adequately considered the supportive services a child was receiving where he "recognized the child was subject to an [IEP], and behavioral plan and received school counseling . . . and recognized that the child was unable to achieve IEP goals without a considerable amount of consistent adult support," and upheld the determination that the child had a less than marked limitation in acquiring and using information).

Although Plaintiff implies that the ALJ improperly gave some weight to several opinions (*see* ECF No. 15-1 at 25), an ALJ's decision regarding functional equivalence need not track any one medical opinion. *See generally Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (although the ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, the ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). In addition, an ALJ is not required to accept every aspect of a particular medical source opinion. *See Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (summary order) (finding no error where ALJ discounted a portion of the consultative examiner's opinion that was inconsistent with other record evidence); *Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) (summary order) (same); *Veino v. Barnhart*, 312 F. 3d 578, 588-89 (2d Cir. 2002) (stating that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve" and holding that "it was within the province of the ALJ" in resolving the evidence to accept parts of a doctor's opinion and reject others).

Plaintiff's arguments that the ALJ cherry-picked information is similarly unavailing. *See* ECF No. 15-1 at 21-27. The ALJ considered the record as a whole and properly resolved conflicts in the evidence, as was his duty. *Veino*, 312 F.3d at 588; *see Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusions must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In sum, Plaintiff has not met her burden of proving that A.L.S. was further limited than the ALJ found. While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). As explained above, there is such evidence here. Accordingly, the Court finds no error in the ALJ's determination that A.L.S. is not disabled.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE